UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| **TINA L. NICHOLS,** an individual,<br><br>Plaintiff,<br><br>v.<br><br>**FIRST DATA CORPORATION,** a Delaware Limited Liability Corporation,<br><br>and<br><br>**JONES LANG LASALLE AMERICAS, INC.,** a Maryland Corporation<br><br>Defendants. | Case No. 8:19-cv-35<br><br>FIRST AMENDED<br><br>COMPLAINT<br><br>Place of Trial: Omaha, NE<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

1. Tina L. Nichols ("Ms. Nichols") is a 56-year-old African American woman who was placed by Jones Lang LaSalle Americas, Inc. ("JLL") at First Data Corporation ("First Data") in Omaha, Nebraska.[1] Ms. Nichols worked at First Data as an Administrative Secretary. Nichols' manager assessed her performance as positive after her first six (6) months; she was told she was "an integral part of the team." Not only was Ms. Nichols told she "does a great job," her supervisor wrote in her MidYear Review that Ms. Nichols

> "has quickly become a part of the fabric of the JLL/First Data family. She is personable, professional and adaptable. She been a great addition…"

2. Nonetheless, Ms. Nichols' was unexpectedly fired from her position. First Data told Ms. Nichols' JLL supervisor, Matt Covey, on May 1, 2017, that "today will be Ms.

---

[1] First Data contracted with JLL for facilities maintenance to provide property and administrative services. The services were located in the Corporate Solutions Business Unit of First Data.

Nichols'] last day." Covey then relayed to Ms. Nichols that "our client said today will be your last day."

3. Neither First Data nor JLL issued Ms. Nichols a warning. Nor did either defendant required Ms. Nichols be put on a performance improvement plan.

4. Ironically, First Data was served with a discrimination charge by one of its former employees, Rodney Nichols, who happens to be Ms. Nichols' husband. He filed charges in Spring 2016 but those charges were not served on First Data until after Ms. Nichols' MidYear review was issued. After Rodney filed discrimination charges against First Data, and those charges were served on it, First Data's treatment of Ms. Nichols' changed. Her Annual Review was markedly different than her MidYear review.

5. Ms. Nichols' termination was due solely on retaliation by First Data because her husband availed himself of the protected legal processes for safeguarding his state and federal rights to be free from discriminatory treatment. The timing demonstrates that Mr. Nichols' discrimination charge with the Omaha Human Rights and Relations was the causative event resulting in Ms. Nichols' termination.

## PARTIES

6. Tina Nichols ("Ms. Nichols") is a 56-year-old African American woman who worked for JLL at First Data until she terminated on May 1, 2017. Ms. Nichols lives in Omaha, Nebraska.

7. First Data Corporation ("First Data") provides technology and services solutions to merchants and financial institutions around the world. First Data is a Delaware Limited Liability Corporation doing business in Nebraska.

8. JLL provides clients services and staffing to merchants and financial institutions, having partnered with First Data. JLL is a Maryland Corporation doing business in Nebraska at First Data's location, 6855 Pacific Street, Omaha, NE 68106.

## JURISDICTION & VENUE

9. This matter arises under federal and state law. This Court has jurisdiction pursuant to 28 U.S.C. §1331 based on Ms. Nichols' federal claims set forth in this Complaint. This Court has supplemental jurisdiction of the Nebraska state law claims pursuant to 28 U.S.C. §1367.

10. Venue is proper in this District pursuant to 28 U.S.C. §1381(b)(2), because the acts complained of here were orchestrated from, planned in, and conducted in this District.

11. Ms. Nichols dual filed charges of discrimination against both Defendants with the Nebraska Equal Opportunity Commission ("NEOC") and the Equal Employment Opportunity Commission ("EEOC").

   **a.** Her administrative charges against First Data are identified as NEOC Charge No. 2-17/28-12-49166-RD and EEOC Charge No. 32E-2018-00159.

   **b.** Her charges against JLL are identified as NEOC Charge No. 2-17/28-12-49167-RD and EEOC Charge No. 32E-2018-00160.

The NEOC issued its determination on both charges as of October 19, 2018. Ms. Nichols received the NEOC's determinations on October 26, 2018. The EEOC issued its Notice of Right to Sue on both charges as of December 18, 2018. (A copy of both of the EEOC

Notices of Right to Sue are attached as Exhibits A and B and incorporated by this reference as if fully set forth).

## **FACTS**

12. Ms. Nichols started working at First Data on March 23, 2016, when JLL placed her at that location. As noted above, her performance at First Data initially was assessed as very positive. In September 2016k, Ms. Nichols' manager described her performance as "personable, professional and adaptable," calling her a "great addition."

13. Unbeknownst to Ms. Nichols' JLL Manager, Matthew Covey, Ms. Nichols' husband, Rodney Nichols ("Rodney"), who was employed directly by First Data, filed a charge of discrimination against First Data with the Omaha Human Rights and Relations Department ("OHRRD") on June 29, 2016. That filing languished at OHRRD for months, until December 18, 2017 when Rodney retained Carlson & Burnett LLP to represent him and the law firm provided OHRRD with its Notice of Representation. (Exhibit C, a true and correct copy of C&B's 12/19/2018 letter of representation is attached as Exhibit C and incorporated here.)

14. Rodney's work at First Data put him in close proximity to First Data's Director of Operations, Mark Jellsey. They could hear one another's telephone conversations from their respective work spaces. Jellsey knew when Rodney's discrimination charge was received by First Data.

15. Jellsey informed First Data's Director of Property, Scott Altic, of Rodney's charge because Ms. Nichols worked with Altic in the same office location. Altic informed JLL, including Ms. Nichols' supervisor Covey, of Rodney's charge filed against First Data.

16. Ms. Nichols' annual performance review, which was performed after First Data received Rodney's charge was dramatically different than her MidYear Review. The only change that took place during the interim period was that Rodney's charge of discrimination against First Data was served.

17. Ms. Nichols seeks judgment against First Data and JLL for their retaliation against her based on the fact that her husband filed discrimination charges against First Data.

## **CLAIM I**

### **RETALIATION**
(42 U.S.C. § 2000e3-a; Neb. Rev. Stat. § 1114)

18. Ms. Nichols incorporates by reference paragraphs 1-17, inclusive, as if fully set forth.

19. Both Nebraska law and federal law in Title VII prohibit retaliation:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 .S.C. § 2000e3-a.

20. To state a retaliation claim, Ms. Nichols must show (1) she engaged in statutorily protected activity by either participation and/or protesting what she believed in good faith to be discriminatory conduct, (2) her employers were of the protected activity,

5

(3) she suffered an adverse employment action, and (4) a causal connection between her engagement in protected activity and the adverse employment action. Close temporal proximity between protected activity and an adverse employment action raises an inference of causation.

21. It is unlawful for an employer to retaliate against an employee because his or her spouse, who is also an employee, filed a charge of discrimination. *See* Equal Employment Opportunity Commission, Compliance Manual §8-II, p. 8-10 (1998).

22. Ms. Nichols was assessed as a successful employee until First Data learned that her husband, one of its former employees, filed a charge of discrimination against it. First Data employees were aware of Rodney's filings based on the service of the charge on it. First Data's Director of Operations, Mark Jellsey, overheard Rodney's telephone and personal conversations in their work spaces. Jellsey knew that Rodney filed a discrimination charge with OHRRD and that the charge was received at First Data.

23. Jellsey informed First Data's Director of Property, Scott Altic, of Rodney's charge. Ms. Nichols worked with Altic in the same office location. Altic then passed along the fact of the Rodney's discrimination charge to Ms. Nichols' supervisor at JLL.

24. After that information was learned, Ms. Nichols treatment by First Data employees changed. She was treated more abruptly by management, she was criticized for trivial matters. First Data and JLL contend they did not know of Rodney's charge. The timing of First Data's and JLL's actions, their increased daily scrutiny, First Data's instructions to JLL to end Ms. Nichol's position all weigh heavily against First Data's claim.

25. First Data instructed JLL to terminate Ms. Nichols' employment at First Data without any warning, any factual basis related to her performance, and ultimately based solely on the fact that her husband Rodney filed discrimination charges against First Data. When those charges were served on First Data and it learned of the Rodney's claims, First Data commanded Ms. Nichols' termination.

WHEREFORE, Ms. Nichols requests judgment ordering an award of damages pursuant to 42 U.S.C. § 12203 *et seq.* and Neb. Rev. Stat. § 48-114 *et seq.* based on retaliatory termination First Data instructed JLL to execute.

## REQUEST FOR RELIEF

Ms. Nichols requests judgment in her favor and awarding the following:

1. Damages for Ms. Nichols' lost and future wages based on her termination;

2. Damages for Ms. Nichols' emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life;

3. Damages for Ms. Nichols' out of pocket expenses for physical and mental health treatment;

4. Punitive damages for First Data's knowing violation of federal discrimination laws;

5. Costs and attorney fees; as allowed by law, and

6. Such other and further relief as the Court deems appropriate.

**PLAINTIFF MAKES DEMAND FOR TRIAL BY JURY IN OMAHA, NEBRASKA.**

DATE:  March 4, 2019.

By: s/ *Terry A. White*
Terry A. White #18282
Alexis S. Mullaney #25908
**CARLSON & BURNETT LLP**
17525 Arbor Street
Omaha, NE 68130
Direct (402) 682-8006
Main (402) 934-5500
terry@carlsonburnett.com
*Attorneys for Plaintiff*

8