## UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| **TINA L. NICHOLS,** an individual,<br>　　　　Plaintiff,<br>v.<br>**FIRST DATA RESOURCES, LLC,** a<br>Delaware Limited Liability Corporation,<br>and<br>**JONES LANG LASALLE AMERICAS,<br>INC.,** a Maryland Corporation<br><br>　　　　Defendants. | **Case No. 8:19-cv-35**<br><br>**PLAINTIFF'S BRIEF IN OPPOSITION<br>TO DEFENDANT JONES LANG'S<br>MOTION TO DISMISS** |

## INTRODUCTION

Jones Lang LaSalle Americas, Inc ("JLL") asks this Court to dismiss Plaintiff Tina Nichols' complaint against JLL based on a narrow and cramped application of the principles applicable to retaliation claims.  The United States Supreme Court has rejected that view, but JLL continues to urge this Court to adopt an outdated legal analysis in support of its motion to dismiss.

## I.　　　ARGUMENT

## A.　　Well-Settled Legal Principles Require Denial of JLL's Motion to Dismiss.

1.　　The liberal pleading standard created by the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the... claim is and the grounds upon which it rests.'"  *Erickson,* 551 U.S. at 93, *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In ruling on a motion to

dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable" to the Plaintiff. *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

2.      To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Plausibility is not akin to probability, but it does require more than a sheer possibility that the defendant acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009).

3.      Here, Ms. Nichols has pled facts demonstrating that JLL engaged in illegal and retaliatory conduct against Plaintiff.  Specifically, Plaintiff alleged as follows:

>    a.  Her husband filed a charge of discrimination on June 29, 2016 with the Omaha Human Rights & Relations Department ("OHRRD") did nothing to investigate Mr. Nichols' charge until after December 2017 notice of representation filed on Mr. Nichols' behalf by Carlson & Burnett.  (Filing No. 1, ¶13.)

>    b.  During the interim period when the OHRRD did nothing, JLL assessed Ms. Nichols' performance as "personable, professional and adaptable," "a great addition." (Complaint ¶ 13.)

>    c.  First Data knew of Mr. Nichols' charge, because First Data's Director of Operations informed Scott Altic, First Data's Director of Property of his

charge.   Ms. Nichols, a JLL employee, worked in the same area with Mr. Altic. (Filing No. 1, ¶ 23.)

d.  Altic then provided the information about Mr. Nichols charge to Ms. Nichols' supervisor, Matthew Covey.   Covey previously gave Ms. Nichols a highly positive performance review.  (Filling No. 1, ¶¶ 12, 23.)

e.  After the OHRRD served Mr. Nichols' charge and stepped up its investigation in 2017, First Data instructed JLL to terminate Ms. Nichols Employment.  (Filling No. 1, ¶ 25.)

f.  Ms. Nichols's performance evaluation after the service and investigation of the charge was dramatically worse than her evaluation before First Data and JLL had knowledge of Mr. Nichols' charge.  (Filing No. 1, ¶ 16,

g.  Ms. Nichols' performance evaluation -- before the December 2017 notice of representation – was highly positive.

h.  As the OHRRD investigation proceeded, First Data instructed JLL to terminate Ms. Nichols and JLL complied.

4.     Ms. Nichols filed her own charge of retaliation with the Nebraska Equal Opportunity Commission ("NEOC") and the Equal Employment Opportunity Commission ("EEOC") it was based, in part, on JLL's termination of her based First Data's instruction to terminate her employment.   (Filing No. 1, Complaint, ¶ 25.)  Ultimately, Ms. Nichols did file a charge against JLL, but her charge was not filed until December 6, 2017 and her charge was based on retaliation, not discrimination.

**B.      Ms. Nichols Allegations That JLL Retaliated Against Her Based on Her Husband's Charge and for Filing Her Own Charge of Retaliation Are More than Sufficient to Withstand Defendant's Motion.**

According to the Nebraska Fair Employment Practices Act, ("NFEPA"),

> It shall be unlawful employment practice for an employer to discriminate against any of his or her employees or applicants * * * because he or she (1) has opposed any practice made an unlawful employment practice by the Nebraska Fair Employment Practice Act, (2) has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the act, or (3) has opposed any practice or refused to carry out any action unlawful under the laws of the United States or this state.

Neb. Rev. Stat. § 48-1114 (2008).

Likewise, under Title VII, retaliation is made illegal:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees * * * because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S. Code § 2000e–3 (1972)

For years, federal district and circuit courts have construed Title VII's retaliation

provisions as broad enough to encompass claims brought because an employee suffers

an adverse employment action after a spouse, partner, family member, or even a co-worker, filed a charge of discrimination.[1]

6       Defendant JLL's motion ignores that in 2011, the United States Supreme Court reached the same conclusion as in the foregoing cases and advanced by Plaintiff here.  See *Thompson v. North American Stainless. LP,* 562 U.S. 170, 178 (2011).  There, the Court held that its "zone of interest" test applies to Title VII and enables a plaintiff to sue if she has an interest "arguably [sought] to be protected by the statute."  *Id.*  The Court continued, concluding that an employee who was fired after his fiancé filed a sex discrimination claim against her employer had standing to sue under a retaliation theory:

> Thompson was an employee of NAS, and the purpose of Title VII is to protect employees from their employers' unlawful actions.  Moreover, accepting the facts as alleged, Thompson is not an accidental victim of the retaliation—collateral damage, so to speak, of the employer's unlawful act.  To the contrary,

---

[1] See *EEOC v. Ohio Edison Co.,* 7 F.3d 541, 544 (6th Cir. 1993) ("We thus reject the conclusion of the district court in the present case that third parties, who have not actually engaged in protected activities themselves, can never sue under 42 U.S.C. § 2000e-3(a)"), *McDonnell v. Cisneros,* 84 F.3d 256, 262 (7th Cir. 1996) (holding that "assisting another employee with his ... discrimination claim, as well as other endeavors to obtain the employer's compliance with Title VII, is protected 'opposition conduct' "), *McKenzie v. Atlantic Richfield Co.,* 906 F.Supp. 572, 575 (D. Colo. 1995) ("the anti-reprisal provision of Title VII precludes an employer from discriminating against an individual because that person's spouse has engaged in protected activities"), *Murphy v. Cadillac Rubber & Plastics, Inc.,* 946 F.Supp. 1108, 1118 (W.D.N.Y.1996) (finding that the plaintiff had stated a cause of action for retaliation under Title VII when plaintiff alleged that a close relative had engaged in protected activity, his employer took a disadvantageous employment action against him, and the time frame indicated a causal connection); *Equal Employment Opportunity Commission v. Nalbandian Sales, Inc.,* 36 F. Supp.2d 1206, 1210 (E.D.Ca. 1998) ("[a] construction that requires standing only where the employee himself has participated in activity giving rise to unlawful retaliation would leave all the other retaliated against employees without a remedy"), *DeMedina v. Reinhardt,* 444 F. Supp. 573, 580 (D.D.C.1978) ("[s]ince tolerance of third-party reprisals would no less than the tolerance of direct reprisals, deter persons from exercising their protected rights under Title VII, the Court must conclude ... that section 2000e-3 proscribes the alleged retaliation of which plaintiff complains); *Mandia v. ARCO Chemical Co.,* 618 F.Supp. 1248, 1250 (W.D. Pa. 1985) (concluding that Plaintiff met the requirements of the participation element of Title VII because the evidence reflected that he participated and supported his wife in the filing of the EEOC charge), and *Thurman v. Robertshaw Control Co.,* 869 F. Supp. 934, 941 (N.D. Ga. 1994) ("[i]n a case of an alleged retaliation for participation in a protected activity by a close relative who is a co-employee, the first element of the prima facie case is modified to require the plaintiff to show that the relative was engaged in statutorily protected expression").

> injuring him was the employer's intended means of harming Regalado.  Hurting him was the unlawful act by which the employer punished her.  In those circumstances, we think Thompson well within the zone of interests sought to be protected by Title VII.  He is a person aggrieved with standing to sue.

(*Id.*)

The Sixth Circuit decision in *Barrett v. Whirlpool Corp.,* 556 F.3d 502, 512 (6TH Cir. 2009), held that "Title VII protects individuals who, though not members of a protected class, are " victims of discriminatory animus toward [protected] third persons with whom the individuals associate."  *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.*, 173 F.3d 988, 994 (6th Cir.1999) (finding a white parent stated a viable claim under Title VII when his employer took adverse actions against him after learning that his daughter was bi-racial).

The *Barrett* court collected opinions demonstrating the scope of this principle's application.  In many of these cases, an actionable associational claim was recognized where the relationship at issue was "one that extended outside the place of employment, such as a familial or romantic relationship."  *Barrett*, 556 F.3d at 513-14.  See, e.g., *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 589 (5th Cir.1998), vacated in part on other grounds by *Williams v. Wal-Mart Stores, Inc.*, 182 F.3d 333 (5th Cir.1999) (interracial dating); *Tetro,* 173 F.3d at 988 (interracial parent-child relationship); *Parr v. Woodmen of World Life Ins. Co.*, 791 F.2d 888, 892 (11th Cir.1986) (interracial marriage); *see also Reiter v. Ctr. Consol. Sch. Dist.*, 618 F.Supp. 1458, 1460 (D.Colo.1985) (association with Hispanic community); *Whitney v. Greater*

6

*N.Y. Corp. of Seventh-Day Adventists*, 401 F.Supp. 1363, 1366 (S.D.N.Y.1975) (casual social relationship with African-American non-employee).

These results are not surprising in light of the interpretations in *Bailey v. USX Corp.*, 850 F.2d 1506 (11th Cir.1988), and *DeMedina v. Reinhardt*, 444 F.Supp. 573 (D.D.C.1978).  In *Bailey*, the Eleventh Circuit expanded the definition of employee to include former employees because any other result would undercut the remedial provisions of Title VII.  *Bailey,* 850 F.2d at 1509-10.

Likewise, in *DeMedina*, the trial court in the District of Columbia Circuit reasoned that while the language of 42 U.S.C. section 2000e-3 stated that while

> Congress did *not expressly* consider discrimination against one person because of a friend's or relative's protected activities, in enacting that section Congress intended to ensure that no person would be deterred from exercising his rights under Title VII by the threat of discriminatory retaliation. Thus, the trial court concluded that a plain language interpretation of Title VII would produce "absurd and unjust results.

444 F. Supp.3d at 580.

As in the authorities cited above, Plaintiff's claim is that JLL retaliated against her after her husband filed his discrimination charge against First Data once the OHRRD finally served his charge and began to investigate.  Just as in *Thompson, Bartlett*, and the other authorities cited above, Ms. Nichols' employer, JLL, terminated her –the ultimate adverse action – after it was informed her husband engaged in the protected activity of filing a charge of discrimination against First Data, which was in a contractual relationship with JLL.  In fact, First Data demanded Ms. Nichols' termination.  Injuring Ms. Nichols was JLL's intended means of carrying out directions from First Data and protecting its own

contractual relationship.  The motivating factor was the protected activity engaged in by Ms. Nichols' husband.

## **CONCLUSION**

WHEREFORE, Ms. Nichols requests that the Court deny JLL's Motion to Dismiss or, alternatively, that she be allowed to amend her Complaint before the Court dismisses her Complaint on a perceived deficiency.


DATE:  April 23, 2019.                          Respectfully submitted,


By:      s/ *Terry A. White*
         Terry A. White, NE # 18282
         **CARLSON & BURNETT LLP**
         17525 Arbor Street
         Omaha, NE 68130
         Direct (402) 682-8006
         Main (402) 934-5500
         terry@carlsonburnett.com
         *Attorney for Plaintiff*

8

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on June 28, 2017, she electronically filed a true and correct copy of the foregoing document with the United States District Court for the District of Nebraska/s CM/ECF e-filing system which will send notice to the following:

Marnie A. Jensen
Kamron Hasan
13330 California Street, Ste 200
Omaha, NE 68154
Marnie.jensen@huschblackwell.com
Kamron.hasan@huschblackwell.com

/s/ Terry A. White
Terry A. White