IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TINA L. NICHOLS, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>FIRST DATA CORPORATION, a Delaware Limited Liability Corporation,<br><br>and<br><br>JONES LANG LASALLE AMERICAS, INC., a Maryland Corporation<br><br>    Defendants. | Case No. 8:19-cv-35<br><br>**DEFENDANT JONES LANG LASALLE AMERICAS, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |

## INTRODUCTION

Plaintiff asks this Court to expand the protections of Title VII and the Nebraska Fair Employment Practices Act ("NFEPA"). Plaintiff's theory of relief is not based on her own protected conduct. It is not based on her employer's retaliation against her. Instead, Plaintiff bases her claims on the alleged protected conduct of her spouse who works for a *different* employer and had no relationship with Plaintiff's employer, and the *spouse's employer's* attempt to retaliate against Plaintiff's spouse, not Plaintiff. This Court already rejected Plaintiff's primary theory of relief; now Plaintiff attempts to replead her way to relief and seek this Court's adoption of a new legal theory. Simply put, there is no Supreme Court, Eighth Circuit, or Nebraska case law allowing such a theory. Defendant Jones Lang LaSalle Americas, Inc. ("JLL") therefore respectfully requests this Court grant its Motion to Dismiss for failure to state a claim upon which relief may be granted and dismiss Plaintiff's claims against JLL, with prejudice.

1

## LEGAL STANDARD

Federal Rule of Civil Procedure Rule 12(b)(6) "serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). To survive a 12(b)(6) motion, a plaintiff must allege, "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). The pleaded facts, accepted as true, must be sufficient to state a claim to relief plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555, 557). The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Thus, a "complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* Allegations that contain nothing "more than conclusions, are not entitled to the assumption of truth." *Id.*; *see also Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 716 (8th Cir. 2011) (reciting 12(b)(6) standard on motion to dismiss in retaliation case).

## RELEVANT FACTUAL AVERMENTS

For purposes of JLL's Motion to Dismiss Plaintiff's Second Amended Complaint, JLL accepts Plaintiff's factual averments as true, but does not accept unsupported legal conclusions. JLL reserves the right to challenge the veracity of Plaintiff's factual averments if the Court allows Plaintiff's claim to proceed.

Plaintiff was employed by JLL. Doc. No. 18 at ¶¶ 1, 6. Her employment began on March 26, 2016. *Id.* at ¶ 14. Plaintiff's last day was May 1, 2017. *Id.* at ¶ 2. Plaintiff's husband, Rodney Nichols ("Rodney") was employed by co-Defendant First Data Corporation ("First Data"). *Id.* at ¶¶ 15, 16. There are no averments that Rodney had any relationship with JLL. Rodney filed an

administrative claim against First Data on June 29, 2016. *Id.* at ¶ 15. According to Plaintiff, the administrative agency did not begin investigating that charge until December 18, 2017. *Id.* Plaintiff thus avers that the investigation did not begin until over six months after Plaintiff's employment with JLL ended. *Compare id.* at ¶ 2, *with id.* at ¶ 15. Plaintiff alleges that First Data employees learned of Rodney's charge at some point in time. *Id.* at ¶¶ 16-17. Plaintiff also alleges that First Data notified Plaintiff's supervisor, Matt Covey, of the existence of Rodney's charge; however, Plaintiff also avers that Mr. Covey did not know that Rodney filed the charge. *Id.* at ¶¶ 17, 15.

Plaintiff's only allegation is that she was retaliated against by First Data and JLL "for their retaliation against her based on the fact that her husband filed discrimination charges against First Data." *Id.* at ¶ 19. Plaintiff's claim is that her "termination was based solely on retaliation by First Data because her husband" allegedly engaged in protected activity, but she does not allege that she engaged in any protected activity. *Id.* at ¶ 5. Thus, while Plaintiff states a legal conclusion that JLL retaliated against her, her only factual averments are that First Data took the allegedly-retaliatory action.

In response to JLL's initial Motion to Dismiss, this Court rejected Plaintiff's theory and found that Plaintiff "has failed to allege a plausible retaliation claim." Doc. No. 17, p. 5. Particularly, this Court held that third-party reprisal cases which Plaintiff cited "only support[] a retaliation claim where 'both the person who had engaged in the protected activity . . . and the person who [suffered the adverse action] were employed' by the same employer." *Id.* at p. 4 (quoting *Tovar v. Essentia Health*, 857 F.3d 771, 777 (8th Cir. 2017)). As Plaintiff is employed by JLL and Rodney is employed by First Data, no plausible claim could arise. *Id.* at pp. 4-5. In response, Plaintiff adds a single paragraph to her Second Amended Complaint, alleging that First

3

Data and JLL were her joint employers.  Doc. No. 18 at ¶ 9.  As set forth below, Plaintiff's new allegation does not save her claim.

## ARGUMENT AND AUTHORITIES

Plaintiff brought her claim utilizing a legal theory unsupported by law and asked this Court to expand the scope of Title VII and the NFEPA.  This Court properly rejected Plaintiff's attempt at a judicial expansion of the law.  Plaintiff now repleads and asks this Court to expand the scope of Title VII and the NFEPA by endorsing a claim that embraces both the "joint employer" doctrine and a "third party reprisal" claim, when Plaintiff's Second Amended Complaint permits neither such theory individually, and certainly not collectively.  Plaintiff's Second Amended Complaint fails to adequately plead a joint employer theory, and even if it did, it is still fatally flawed because she fails to allege that she engaged in protected conduct, that JLL retaliated against her, or that JLL had an independent relationship with Rodney.

**I.  PLAINTIFF'S "JOINT EMPLOYER" ALLEGATIONS ARE INSUFFICIENT TO SURVIVE A MOTION TO DISMISS.**

The additional paragraph in Plaintiff's Second Amended Complaint is insufficient to establish that JLL and First Data were Plaintiff's joint employers.  The four-factors utilized to determine whether a joint employer relationship exists are: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control over the entities.  *Baker v. Stuart Broad. Co.*, 560 F.2d 389, 392 (8th Cir. 1977).  In making the determination, the trial court is free to ignore conclusory labels.  *See Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 961 (8th Cir. 2015) (allegation that three companies "were part of an integrated enterprise" that "shared interrelated operations, centralized control of labor relations, common management and common ownership and/or financial control" provided only "labels and conclusions" and failed to state a necessary element of an FLSA claim); *Steier v.*

4

*Highland Operating Co.*, No. 4:16CV3184, 2017 WL 384295, at *1 (D. Neb. Jan. 25, 2017). Several cases from the Eighth Circuit demonstrate that Plaintiff's new allegations are insufficient to allow Plaintiff's claims against JLL to survive a motion to dismiss.

Plaintiff's allegations detail a narrow corner of activity—essentially constituting *only* Plaintiff's position—over which First Data and JLL have any allegedly overlapping relationship. Plaintiff alleges that JLL has a branch office at First Data's facility, and that JLL runs the day-to-day operations of First Data's "physical facilities." Doc. No. 18 at ¶ 9. Plaintiff's position in turn involved "tasks related to JLL's management of First Data's facilities." *Id.* Finally, Plaintiff alleges that one individual employed by First Data, Scott Altic (the First Data Director of Properties), directed the work of Plaintiff's JLL manager, Matt Covey. *Id.*

Plaintiff's sparse allegations, even assumed to be true, fail to establish a joint employer relation when compared to reported cases on this issue. The *Baker* case, cited by this Court, provides a clear example of what facts can satisfy a joint employer relationship. One company (SBC) provided management services for the other (GIB). *Baker*, 560 F.2d at 392. SBC and GIB were both owned by the same individuals. *Id*. These individuals also served as members of the board of directors and officers of both companies. *Id*. The same individual was the president of both companies. *Id*. SBC provided check writing and license renewal services for GIB, and also issued policy manuals that GIB had to follow. *Id*. The two companies were managed and treated as one, and both were dedicated to accomplishing the same goal and business purpose. *Id.* at 390-91. In that scenario, it was appropriate to find that their operations were "so intertwined" as to "be considered the single employer of the charging party." Doc. No. 17, p. 5 (quoting *Davis v. Ricketts*, 765 F.3d 823, 827 (8th Cir. 2014)).

In contrast, First Data "provides technology and services solutions to merchants and financial institutions," Doc. No. 18 at ¶ 7, while JLL provides "client services and staffing" to merchants and financial institutions. *Id.* at ¶ 8; *accord id.* at p. 1, n.1 ("First Data contracted with JLL for facilities maintenance to provide property and administrative services."). The two entities do not exist to advance the same core mission, and Plaintiff has pleaded nothing to the contrary. Plaintiff's allegations regarding management by a First Data employee and JLL's "management of First Data's facilities" are inapt attempts to plead conclusory labels to satisfy the factors of the joint employer test. That JLL ran the "physical facilities" of First Data states no more than that JLL ran *the specific operation it was hired to run*.[1] The same is true as to the First Data employee Scott Altic: he was the "Director of Properties," and managed Plaintiff *as to the task Plaintiff was hired to complete*. Plaintiff alleges no overlapping ownership of the two companies, and any "management" is unrelated to the mission of either company. *See Davis*, 765 F.3d at 828 ("The degree to which the entities share common management includes whether the same individuals manage or supervise the different entities or whether the entities have common officers and boards of directors."); *id.* at 827 (the "interrelation of operations factors . . . requires evaluation of whether the entities are operated as a single unit . . . and whether the entities' functions and purpose are

---

[1] To allege joint employer status of JLL and First Data because JLL ran the "physical facilities" of First Data and Plaintiff completed tasks related to those facilities is akin to stating that a facility that hires a cleaning company establishes a joint employer relationship between the facility and the cleaning company simply because the cleaning company "runs the day to day operations of all cleaning services at the facility." That an employee at the facility then directs what areas need to be cleaned—just as Scott Altic allegedly directed work of Plaintiff's supervisor—does nothing to establish that the two companies are so intertwined as to be one entity. Moreover, Plaintiff's theory would then assert that if an employee of the facility files a discrimination charge against the facility, the *cleaning company* is now liable for retaliation if it takes any adverse action against one of the cleaners. The implications of such a theory for companies that outsource tasks ancillary to their business would be far-reaching and unpredictable. An array of service providers (i.e. cleaning companies, copy machine technicians, electricians, elevator repair companies, etc.) would conceivably be subjected to retaliation claims if one of its employees happened to have a family member employed by the client company (which may be quite likely if the client entity is a large company with hundreds or thousands of employees). There is simply no legal basis in the Eighth Circuit to support such a theory.

6

similar or distinct"). It cannot be plausibly maintained that the two companies "are of such coagulation that they must be considered one." *Baker*, 560 F.2d at 391.

While *Baker* provides an example of a sufficient joint employer scenario—one which Plaintiff's allegations fall far short of—additional cases detail scenarios with allegations far *greater* than Plaintiff has made, that still fell short of joint employer status. For example, *Davis* involved OEF, a nonprofit corporation, and Hugo, a for-profit LLC. *Davis*, 765 F.3d at 825-26. Much like JLL's provision of facility services for First Data, Hugo provided "administrative services to OEF because OEF does not have an administrative infrastructure." *Id.* at 828. Hugo provided "accounts payable, accounts receivable, payroll administration, benefits coordination, and some legal and human resources services to OEF." *Id.* Further, Joe Ricketts owned Hugo, founded OEF, controlled OEF, was OEF's sole source of funding, and was the sole stockholder of Hugo. *Id.* Yet despite this, the Eighth Circuit held that OEF and Hugo were not joint employers. *Id.* at 829. First Data and JLL, even crediting Plaintiff's allegations, do not share half the commonalities that Hugo and OEF shared. In its analysis, the Eighth Circuit noted that "[i]n situations where the court is asked to disregard the separate and distinct form of legal entities, *the standards are narrow and rigorous, imposing a presumption of corporate separateness*." *Id.* at 827 (emphasis added).[2]

Furthermore, Eighth Circuit cases demonstrate the insufficiency of Plaintiff's allegations. The court in *Pulitzer Pub. Co. v. N.L.R.B.* overruled a NLRB decision which found a joint employer relationship between a newspaper publisher and a newspaper distributor. 618 F.2d 1275

---

[2] While not expressly equating the two, the Eighth Circuit cited to cases involving the doctrine of corporate veil piercing in support of the rigorous standard for establishing joint employer status. *See Davis*, 765 F.3d at 827 ("[I]n the context of a parent-subsidiary relationship, '[s]eparate corporate entities should be disregarded only when there is some abuse of the privilege to operate as separate corporations to the detriment of a third party[.]'") (quoting *Robinson v. Terex Corp.,* 439 F.3d 465, 468 (8th Cir. 2006)).

7

(8th Cir. 1980). The court noted there were "no interlocking officers or directors" between the companies, and that "neither has any direct financial interest in the other." *Id.* at 1279. The court also referenced a prior case, *Russom v. Sears, Roebuck & Co.*, 558 F.2d 439 (8th Cir. 1977), stating:

> After a careful examination of all of the relevant facts, we determined that Sears was not a joint employer of the employees of Dependable Appliance Service, Inc. (DAS). In both Russom and the case at bar, the companies maintained a close business relationship. In many respects the business operations in Russom were interconnected to a greater extent. DAS performed substantially all of its business for Sears; Sears trained the DAS employees; DAS employees received a discount at Sears stores and participated in Sears employee contests; and there was evidence that DAS was created in an effort to alleviate Sears's previous labor relations problems.

*Id.* at 1280. Despite this extensive interconnectedness and "close business relationship," joint employer status was still lacking. *Id.* Having a company perform "substantially all of its business" for the other, and training the other's employees, is more intensive than any relationship alleged by Plaintiff between First Data and JLL—yet is still insufficient.

Plaintiff fails to allege facts sufficient to raise a plausible claim that First Data and JLL are joint employers. Without a plausible joint employer relationship, all that remains of Plaintiff's Second Amended Complaint are the same facts this Court already determined "failed to allege a plausible retaliation claim." Doc. No. 17, p. 5. Despite two attempts at amending her Complaint, Plaintiff has still failed to state a claim upon which relief may be granted. Plaintiff should not be allowed to continue holding JLL hostage in this suit as she attempts to replead a claim that does not exist. Her Second Amended Complaint should be dismissed with prejudice.

II. **EVEN IF JOINT EMPLOYER STATUS EXISTS, PLAINTIFF'S THEORY IS LEGALLY FLAWED.**

Assuming for the purpose of argument that Plaintiff had sufficiently alleged a joint employer relationship of First Data and JLL as to her, which she has not, Plaintiff's claim would

8

still fail. Plaintiff alleges retaliation under Title VII and the NFEPA. Doc. No. 18 at ¶¶ 21-22. Those statutes prohibit retaliation against an employee because the employee opposed an unlawful employment practice or because the employee made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing. *See*, *e.g.*, *Collins v. Great Dane Trailers*, No. 8:16CV132, 2017 WL 706182, at *4 (D. Neb. Feb. 22, 2017) (analyzing Title VII); *Verby v. Paypal, Inc*., No. 8:13-CV-51, 2014 WL 1689684, at *8 (D. Neb. Apr. 29, 2014) (Title VII prohibits an employer from retaliating against an employee for opposing unlawful discrimination).[3]

The anti-retaliation laws are designed to protect *employees* from *their employers'* unlawful employment practices. *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of [the employer's] employees or applicants for employment…because [the employee] has opposed any practice made an unlawful employment practice…or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing….") (emphases added); Neb. Rev. Stat. § 48-1114 (substantially the same); *Hunt v. State of Missouri, Dep't of Corr.*, 297 F.3d 735, 741 (8th Cir. 2002) (explaining Title VII protects employees and not independent contractors).

As a general rule, a plaintiff bringing a retaliation claim must have engaged in protected conduct. *E.g.*, *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 819 (8th Cir. 1998); *see also Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Employees of Library of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013) (explaining that a particular employee must allege she engaged in statutorily-protected activity). However, the Supreme Court, recognizing that Title VII's anti-retaliation purpose is to protect employees from their employers' unlawful acts, has recognized a

---

[3] NFEPA retaliation claims are governed by the same standard as Title VII retaliation claims. *Reyes v. Pharma Chemie, Inc*., 890 F. Supp. 2d 1147, 1167 (D. Neb. 2012).

9

limited exception to the general rule. *See Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174 (2011). This narrow exception embraces Title VII's anti-retaliation prohibition of action that would dissuade a reasonable employee from making or supporting a charge of discrimination. *Id*. The exception allows for so-called "third party reprisals," but only by a plaintiff holding an interest arguably sought to be protected by Title VII. *Id*. at 175, 177-78.

The exception has not been extended to claims in which a plaintiff, employed by one employer, is able to bring a retaliation claim based on the alleged protected conduct by the plaintiff's spouse when that spouse was employed by a different employer. *See Tovar v. Essentia Health*, 857 F.3d 771, 777 (8th Cir. 2017). In other words, "third party reprisal" claims have been limited to instances where the plaintiff and the individual who engaged in the protected conduct were employed by the same employer. *Id*. ("*Thompson* therefore fails to establish that the protections of Title VII extend to an employer's discrimination against an employee's beneficiary who does not have an independent relationship with the employer."). The claims have been so limited because the purpose of the anti-retaliation laws is to protect employees from their employers' unlawful actions. *Id*. (citing *Thompson*, 562 U.S. at 178).

Plaintiff does not allege that she engaged in any protected activity. *See Smith*, 151 F.3d at 819. The only alleged protected conduct was that of *her husband* as related to his employer, not JLL. Doc. No. 18 at ¶¶ 15, 24. This Court held that Plaintiff failed to state a plausible claim as she is employed by a different employer than Rodney. Plaintiff now attempts to plead her way around this holding by asserting that First Data and JLL "were Ms. Nichols' joint employers." *Id.* at ¶ 9. This theory is still legally and logically flawed.

The Eight Circuit in *Tovar* provided the limits of the third-party reprisal doctrine. There, a plaintiff was unable to bring a discrimination claim after she was terminated because of alleged

10

discrimination against her non-employee son that had been diagnosed with gender dysmorphia. *Tovar*, 857 F.3d at 773. In rejecting the plaintiff's attempted reliance on the third-party reprisal doctrine detailed in *Thompson*, the court held that "Thompson [] fails to establish that the protections of Title VII extend to an employer's discrimination against an employee's beneficiary who does not have an independent relationship with the employer." *Tovar*, 857 F.3d at 777 (emphasis added).

At most, Plaintiff's allegations, assuming they could establish a joint employer relationship, establish that First Data and JLL were joint employers as to Plaintiff and that First Data directed some alleged retaliation. Plaintiff's allegations do not create a connection between alleged protected conduct and JLL. There are no averments that JLL had any interactions with Plaintiff's husband whatsoever, and there are certainly no averments that Plaintiff's husband had an independent relationship with JLL. That is due to Plaintiff's husband being employed by First Data, not JLL. Doc. No. 18 at ¶ 15. Construed to its most favorable extent, a joint employer theory would mean that Plaintiff could sue First Data for retaliation against Plaintiff—despite the fact that Plaintiff was hired by JLL and could ordinarily only sue JLL if it retaliated against her. Plaintiff is attempting to sue JLL based on First Data's alleged retaliatory motive toward Rodney, but she fails to establish that Rodney has an independent relationship with her employer, JLL. Her allegations exclusively detail alleged overlap of First Data and JLL as to only Plaintiff's position. *See id.* at ¶ 9 ("First Data and JLL were *Ms. Nichols'* joint employers . . . *Ms. Nichols* completed tasks related to JLL's management of First Data's facilities . . . *Ms. Nichols* regularly worked with and took direction from First Data Director of Properties Scott Altic . . .") (emphases added). Had Plaintiff sufficiently alleged a joint employer theory, she could sue First Data for its retaliation.

11

She cannot sue JLL for First Data's alleged retaliation against an employee with no independent relationship with JLL.

Thus, setting aside the numerous additional problems Plaintiff would encounter in trying to state a claim against JLL,[4] Plaintiff's retaliation claims against JLL are not plausible on their face. Plaintiff's claim against JLL should be dismissed with prejudice because Plaintiff does not have a viable retaliation claim against JLL.

## CONCLUSION

Plaintiff admits she did not engage in any protected conduct. Plaintiff admits that the only purported protected activity was undertaken by her husband, who was an employee of First Data and had no relationship with JLL, who was Plaintiff's employer. Plaintiff admits that the only alleged retaliatory conduct was by First Data, not JLL. Plaintiff is therefore asking this Court to expand Title VII and NFEPA to cover alleged protected conduct of spouses of employees who work for different employers. Her new allegations fall far short under Eighth Circuit precedent of establishing a joint employer relationship, and even if they did, they still fail to establish that Plaintiff's husband had an independent relationship with JLL—even if Plaintiff had one with First Data. There is simply no Nebraska or Eighth Circuit right to relief against JLL under these circumstances. For the foregoing reasons, Defendant Jones Lang LaSalle Americas, Inc. respectfully requests this Court grant its Motion to Dismiss Plaintiff's Second Amended

---

[4] For example, Plaintiff avers contradictory facts about whether JLL ever had knowledge of Rodney's administrative charge. Plaintiff alleges that Mr. Covey did not know Rodney filed the charge. Doc. No. 18 at ¶ 15. Plaintiff contradicts herself by alleging that First Data did tell Mr. Covey, though she does not allege when this happened. *Id.* at ¶¶ 17, 15. Plaintiff's claims should be also be dismissed for failure to state a claim upon which relief may be granted based on these separate, conflicting allegations. Nor does Plaintiff address the over six-month gap in time between when she was terminated and when the administrative investigation *began*. *Compare id.* at ¶ 2 *with id.* at ¶ 15. Additionally, as this Court noted, Plaintiff "attributes the approximate ten-month gap between Rodney filing his charge and her termination to the fact that the OHRRD moved slowly," and the OHRRD did nothing on the charge until a "law firm entered a Notice of Representation on December 18, 2017." Doc. No. 17, p. 2, n.2. But her "explanation falls short because December 18, 2017, is well after she was already fired on May 1, 2017." *Id.*

Complaint, with prejudice, because Plaintiff has failed to state a claim upon which relief may be granted.

Dated this 17th day of September, 2019.

                                  JONES LANG LASALLE AMERICAS, INC., Defendant.

By:   */s/ Kamron Hasan*
       Marnie A. Jensen (#22380)
       Kamron Hasan (#25404)
       Quinn R. Eaton (#26318)
       HUSCH BLACKWELL LLP
       13330 California St., Ste. 200
       Omaha, NE 68154
       Telephone: (402) 964-5000
       Facsimile:(402) 964-5050
       marnie.jensen@huschblackwell.com
       kamron.hasan@huschblackwell.com
       quinn.eaton@huschblackwell.com

*Attorneys for Jones Lang LaSalle Americas, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 17th day of September, 2019, the foregoing document was electronically filed with Clerk of the Court using the CM/ECF system which sent electronic notification of such filing to all CM/ECF Participants.

                                  /s/ *Kamron Hasan*