IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TINA L. NICHOLS, an individual; Plaintiff, vs. JONES LANG LASALLE AMERICAS, INC., a Maryland Corporation; and FIRST DATA CORPORATION, a Delaware Limited Liability Corporation; Defendants. | 8:19-CV-35 MEMORANDUM AND ORDER |

This case comes before the Court on defendant Jones Lang LaSalle Americas, Inc.'s Motion to Dismiss (Filing 20) pursuant to Fed. R. Civ. P. 12(b)(6). The Court finds that Plaintiff has failed to state a claim against defendant Jones Lang LaSalle Americas, Inc. ("JLL") in her Third Amended Complaint. (Filing 26). Accordingly, the Court grants defendant JLL's Motion to Dismiss (Filing 20).

I. BACKGROUND[1]

Defendant, First Data Corporation ("First Data"), is a Delaware LLC that does business in Nebraska and provides technology and service solutions to merchants and financial institutions. Filing 26 at 3, ¶ 7. Defendant, JLL, is a Maryland corporation doing business in Nebraska offering client services and staffing to merchants. Filing 26 at 2, ¶ 7. JLL maintains a branch office at First Data's Omaha, Nebraska facility and generally runs the day-to-day operations of First Data's

---

[1] Although JLL may dispute some of the facts recited herein, when deciding a motion to dismiss, the Court "must accept a plaintiff's factual allegations as true" and make all reasonable inferences in favor of the nonmoving party. *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012).

1

Omaha facilities. Filing 26 at 3, ¶ 9. More specifically, First Data "contracted with JLL for facilities maintenance to provide property and administrative services." Filing 26 at 1, ¶ 2.

Plaintiff, Tina L. Nichols, is a Nebraska citizen and resident who worked for JLL. Filing 26 at 2, ¶ 6. JLL placed Tina at First Data's Omaha location as an administrative secretary on March 23, 2016. Filing 26 at 1, 4, ¶ 1, 14. As part of her job, Tina "completed tasks related to JLL's management of First Data's facilities"; "used both JLL and First Data web platforms to complete her work"; and "regularly worked with and took direction from" First Data Director of Properties, Scott Altic, who managed and directed the work of Tina's JLL supervisor, Matthew Covey. Filing 26 at 3, ¶ 9.

Tina's husband, Rodney Nichols, worked for First Data. Filing 26 at 5, ¶ 15. On June 29, 2016, Rodney filed a discrimination charge based on his age and race against First Data with the Omaha Human Rights and Relations Department ("OHRRD"). Filing 26 at 2, 5, ¶¶ 4, 15. First Data's Director of Operations, Mark Jellsey, became aware of Rodney's discrimination charge at an unknown time and told Altic about it. Filing 26 at 5, ¶¶ 16-17. Altic, who worked in the same location as Tina, informed Covey of the charge at an unknown time. Filing 26 at 5, ¶¶ 15, 17.

Tina's JLL manager initially gave her a positive mid-year review, deeming her "part of the fabric of the JLL/First Data family." Filing 26 at 1, ¶ 1. However, Tina's subsequent annual-performance review, conducted after Covey became aware of Rodney's discrimination charges against First Data, was "dramatically" different from her previous, positive mid-year review. Filing 26 at 1, 5, ¶¶ 1, 18. Further, Tina "was treated more abruptly by management" and "criticized for trivial matters" after Covey learned of her husband's discrimination charges against First Data. Filing 26 at 7, ¶ 26. Tina alleges the only change during the time between her reviews and different treatment was Rodney's discrimination charge. Filing 26 at 5, ¶ 18.

2

On May 1, 2017, First Data told Covey that "today will be [Tina's] last day," and Covey relayed this message to Tina that same day by firing her without warning. Filing 26 at 1-2, ¶¶ 2-3. Tina alleges "First Data instructed JLL to terminate [her] employment at First Data . . . based solely on the fact that her husband [Rodney] filed discrimination charges against First Data." Filing 26 at 7, ¶ 27. She also alleges First Data exercises control over JLL's hiring and firing as evidenced by First Data instructing JLL to fire her. Filing 26 at 3, ¶ 9.

Tina subsequently filed discrimination charges against First Data and JLL with the Nebraska Equal Opportunity Commission ("NEOC") and the United States Equal Employment Opportunity Commission ("EEOC"). The NEOC "issued its determinations on October 26, 2018," and the EEOC issued her Notices of Right to Sue on December 18, 2018. Filing 26 at 4, ¶ 13. Tina then filed this action on January 24, 2019, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a), and the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. § 48-1114. See Filing 1.

On April 3, 2019, JLL filed a Motion to Dismiss for failure to state a claim arguing Tina and Rodney Nichols were not employed by the same employer and were therefore unable to state a claim for retaliation given clear caselaw limiting third-party reprisal retaliation claims to instances where both the person engaged in the protected activity and the person suffering retaliation were employed by the same employer. See generally Filings 13, 14. In its August 20, 2019 order, the Court agreed that Tina's complaint failed to state a claim to the extent she had not pled joint employment. Filing 17 at 5. The Court granted her fourteen days to amend her complaint to plead sufficient facts to plausibly show either (1) JLL and First Data were her joint employers or (2) Rodney worked for JLL. Filing 17 at 5. Tina responded by timely filing her Second Amended Complaint (Filing 18), and JLL filed the instant Motion to Dismiss (Filing 20) in response. The Court then allowed Tina to file a substantively identical Third Amended Complaint (Filing 26) to

correct an error in First Data's name and informed the parties that it would construe JLL's Motion to Dismiss (Filing 20) as its responsive pleading to Tina Nichols's Third Amended Complaint (Filing 26). *See* Filing 25.

## II. DISCUSSION

### A. Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 192 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, but [is] not bound to accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' or legal conclusions couched as factual allegations." *McDonough v. Anoka Cty.*, 799 F.3d 931, 945 (8th Cir. 2015) (citations omitted) (quoting *Iqbal*, 556 U.S. at 678). "When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Ashford v.*

*Douglas Cty.*, 880 F.3d 990, 992 (8th Cir. 2018) (quoting *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014)).

### B. Joint Employment

Tina Nichols, employed by JLL, originally alleged that she suffered an adverse employment action because her husband Rodney, employed by First Data, engaged in protected activity. *See* Filing 8. The Court determined, however, that Tina pled insufficient facts and needed to plausibly plead that JLL and First Data jointly employed her for her NFEPA and Title VII retaliation claims to move forward because "third-party reprisal only supports a retaliation claim where 'both the person who had engaged in the protected activity. . . and the person who [suffered the adverse employment action] were employed' by the same employer." Filing 17 at 5 (quoting *Tovar v. Essentia Health*, 857 F.3d 771, 777 (8th Cir. 2017)).[2] The Court now analyzes Tina's Third Amended Complaint and finds that she has again failed to plausibly plead joint employment.

Under certain circumstances, "the operations of two or more employers are considered so intertwined that they can be considered the single employer of the charging party." *Davis*, 765 F.3d at 827 (quoting EEOC Compliance Manual § 2-III(B)(1)(a)(iii)). To determine whether two employers are joint employers (or an "integrated enterprise"), the Court considers: (1) the degree of interrelation between the operations, (2) the degree to which the entities share common management, (3) centralized control of labor relations, and (4) the degree of common ownership or financial control over the entities. *Davis*, 765 F.3d at 827. "In situations where the court is asked to disregard the separate and distinct form of legal entities, the standards are narrow and rigorous, imposing a presumption of corporate separateness." *Id.*

---

[2] "The Nebraska legislature patterned the NFEPA after Title VII, and Nebraska courts consider federal court decisions when construing its language." *Davis v. Ricketts*, 765 F.3d 823, 826 (8th Cir. 2014) (applying the same "integrated enterprise" test to both NFEPA and Title VII claims). Accordingly, the Court will analyze Nichols's Title VII and NFEPA claims together.

As an initial matter, First Data is a Delaware LLC while JLL is a Maryland corporation. *See* Filing 26 at 1, 3, ¶¶ 7-8. The Court finds they are separate and distinct legal entities.

Moving on to her allegations of joint employment, Tina Nichols argues she complied with the Court's order to plausibly plead joint employment by amending her allegations to include the following facts[3]:

- JLL maintains a branch office at First Data's Omaha, Nebraska facility and runs the day to day operations of First Data's physical facilities;

- First Data owns the facility at which JLL maintains its office;

- Tina "completed tasks related to JLL's management of First Data's facilities"; "used both JLL and First Data web platforms to complete her work"; and "regularly worked with and took direction from" Altic, who managed and directed the work of Covey and Tina Nichols;

- First Data exercises control over JLL's hiring and firing as evidenced by First Data instructing JLL to fire her; and

- Covey referred to the "JLL/First Data Family" in Tina's mid-year evaluation.

Filing 27 at 2-3. *See also* Filing 26 at 3, ¶ 9.

Given these allegations which the Court presumes as true, the Court first considers the degree of interrelation between JLL and First Data. *See Davis*, 765 F.3d at 827. "The interrelation of operations factor examines whether the two entities share managers and personnel, payroll, insurance programs, office space, and equipment." *Id.* The Court also evaluates whether the entities operate as a single unit and "whether the entities' functions and purpose are similar or distinct." *Id.* (citing *Engelhardt v. S.P. Richards Co.*, 472 F.3d 1, 6–7 (1st Cir. 2006) and noting

---

[3] The Court does not include as fact Tina's assertion that First Data and JLL are "joint employers" because the Court need not accept as true "legal conclusions couched as factual allegations." *McDonough*, 799 F.3d at 945.

the *Engelhardt* court found no interrelation of operations when companies had separate headquarters, human resource departments, records and record keeping, and work sites which fulfilled distinct functions).

Tina alleges JLL contracted to run First Data's daily operations by providing facility maintenance and administrative services and that JLL maintains a branch office within First Data's facility. Filing 26 at 1, 3, ¶¶ 1, 9. She argues that these two facts demonstrate sufficient interrelation of operations even though the services provided are limited and contractual. *See* Filing 27 at 6. However, it appears that JLL's office space is not shared with First Data; it is a separate space within First Data's facility and is a branch rather than headquarters. *See* Filing 26 at 3, ¶ 9. Further, Tina does not allege that the entities have similar functions or purposes. She instead alleges they have distinct functions: JLL provides contractual staffing and day-to-day operational management while First Data provides "technology and services solutions to merchants and financial institutions around the world." Filing 26 at 3, ¶¶ 7-8; *see* Filing 27 at 6. Even though Tina need not plead facts sufficient to address each interrelation consideration courts analyze at the summary judgment stage, the Court finds this factor disfavors a finding of joint employment given the paucity of allegations demonstrating interrelation and the distinct contractual staffing function performed by JLL and technology services provided by First Data. *See Davis*, 765 F.3d at 828 (finding two corporations were not interrelated despite one providing accounts payable and receivable, payroll administration, benefits coordination, and some legal a human resources services to the other because of the corporations' distinct purposes and functions).

Second, the Court considers whether or to what degree JLL and First Data share common management. *See Davis*, 765 F.3d at 827. "The degree to which the entities share common management includes whether the same individuals manage or supervise the different entities or whether the entities have common officers and boards of directors." *Id.* at 828. (citing *Sandoval v.*

7

*Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 793 (8th Cir. 2009). Here, Tina's only relevant allegation is that Altic "managed and directed" her and Covey. Filing 26 at 3, ¶ 9. Tina Nichols does not allege common management beyond Altic and Covey, such as organizational officers, board directors, or owners. Her Complaint admits that the two companies were not commonly managed but rather that "First Data contracted with JLL for facilities maintenance to provide property and administrative services." Filing 26 at 1, ¶ 1. This is not an instance of common managers or directors but rather a contractual relationship for limited services: JLL placed Tina Nichols at First Data pursuant to a contract for *property* and administrative services, and Altic—Director of *Properties*—oversaw Tina's work under said contract. See Filing 26 at 1, ¶ 1. Thus, the Court finds this factor disfavors a finding of joint employment.

Third, the Court assesses whether JLL and First Data have centralized control of labor relations. See *Davis*, 765 F.3d at 827. In analyzing this factor, courts consider who is responsible for hiring and firing and who sets the employment policies, work schedules, and salaries. See *id.* at 828. Tina alleges First Data told Covey to fire her, and Covey complied. Filing 26 at 1-3, 7, ¶¶ 2-3, 9, 27. On one hand, this shows an overlap of duties related to hiring and firing. On the other, such control over Tina's employment is consistent with the alleged contract for services. Drawing all reasonable inferences in favor of Tina, the Court finds this factor slightly favors joint employment.

Fourth and finally, the Court turns to the degree of common ownership of or financial control over JLL and First Data. See *Davis*, 765 F.3d at 827. "The degree of common ownership or financial control asks whether one company owns the majority or all shares of the other and if the entities share common officers or directors." *Id.* at 828–29 (quoting *Sandoval*, 578 F.3d at 793). Tina alleges nothing related to this factor and admits as much in her briefing. See Filing 27 at 6. As a result, this factor does not favor a finding of joint employment.

8

Tina Nichols points out that the District Court in *Davis*, prior to the Eighth Circuit decision and case law cited above, denied a motion to dismiss for failure to state a claim and argues the Court should do the same here. *Davis v. Ricketts*, No. 8:11CV221, 2011 WL 9369010, at *5 (D. Neb. Nov. 14, 2011). However, Davis pled ample facts supporting the Court's initial finding of joint employment which are lacking in the case at hand. *Id.* at 1. For example, Davis pled that Ricketts founded, served on the board of directors of, and was the benefactor and CEO of one organization while also owning and managing the other organization. *Id.* Davis also pled that Ricketts ultimately directed her firing which alone, in the context of a parent–subsidiary relationship, supports a finding of joint employment. *Id.*; *see also Brown v. Fred's Inc.*, 494 F.3d 736, 739 (8th Cir. 2007) (holding corporate separateness between a parent and its subsidiary is defeated when the parent company is linked to the alleged discriminatory action because it controls individual employment decisions)). These facts showed common ownership, common management, and centralized control of labor relations sufficient to withstand a motion to dismiss.

In contrast to *Davis*, the Court finds the only factor Tina Nichols has adequately pled is centralized labor relations; she has not pled facts which would support a finding of interrelation, common management, or common ownership. The current allegations before the Court lead to the conclusion that JLL and First Data are not integrated employers but rather separate business entities with distinct purposes and functions related only through limited contractual obligations. Further, Tina Nichols has not in any way pled that her husband Rodney is employed by or has any relationship with JLL.

Third-party reprisal only states a retaliation claim where both the person who engaged in the protected activity—here, Rodney Nichols—and the person who suffered the adverse employment action—Tina Nichols—were employed by the same employer—either First Data or JLL. *See* Filing 17 at 5; *Tovar*, 857 F.3d at 777. Tina has not adequately pled that she or Rodney

9

were employed by the same employer, and thus the Court concludes that Tina Nichols has not properly stated a claim under Title VII or NFEPA.

The Court previously found Tina Nichols did not plead sufficient facts to show joint employment with JLL and gave her leave to amend her complaint in accordance with the joint employment factors enumerated in the Court's Order. *See* [Filing 17 at 5](Filing 17 at 5). Despite the Court's clear guidance, Tina has failed to remedy her pleading deficiencies, and the Court will dismiss her claim against JLL without prejudice subject to reassertion, with the Court's leave, should relevant facts become known during the discovery process to remedy the pleading deficiencies through an amended complaint.

### III. CONCLUSION

For the foregoing reasons, the Court finds that Tina Nichols has failed to state a claim upon which relief could be granted as to defendant Jones Lang LaSalle Americas, Inc.

IT IS THEREFORE ORDERED:

1. Defendant Jones Lang LaSalle Americas, Inc.'s Motion to Dismiss ([Filing 20](Filing 20)) is granted;
2. Defendant Jones Lang LaSalle Americas, Inc. is dismissed as a party to this action.

Dated this 27th day of November, 2019.

BY THE COURT:

                        Brian C. Buescher
                        United States District Judge